UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CEDRIC LEE

VERSUS

UNITED RENTALS, INC., ET AL.

CIVIL ACTION

NO. 18-977-JWD-EWD

RULING ON PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY
AND DEFENDANT'S LIFE CARE PLAN

This matter comes before the Court by way of a *Motion to Exclude Testimony and Defendant's Life Care Plan* (Doc. 107), brought by plaintiff Cedric Lee ("Lee" or "Plaintiff"). It is opposed by defendant JLG Industries, Inc. ("JLG" or "Defendant"). (Doc. 112.) Plaintiff did not file a reply brief. The Court has carefully considered the law, the facts in the record and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted.

I.  BACKGROUND

This product liability lawsuit arises out of an accident which occurred on September 20, 2017 at the PCS Nitrogen Fertilizer LP ("PCS") plant in Geismar, Louisiana. (Doc. 107-1 at 1.) Plaintiff, an employee of Turner Industries Group, LLC, ("Turner") claims as he was driving a boom lift manufactured by JLG, the lift suddenly jerked and accelerated as he crossed over a speed bump causing him to fall back into the basket and sustain injuries. (*Id*.) Plaintiff claims the accident and resulting injuries were the result of a defectively designed function speed control switch on the boom lift. (Doc. 114 at 3.) Plaintiff sued JLG as the designer and manufacturer of the lift and United Rentals, Inc. and/or United Rentals (North America), Inc. (collectively, "United") as the entity which leased the boom lift to PCS. (Doc. 19.)

1

Turner paid workers' compensation benefits to Plaintiff and his medical bills to Plaintiff's providers. Turner filed a *Complaint of Intervention* seeking to recover these amounts from JLG and United. (Doc. 101-3; *see also* Doc. 40.) According to JLG, Turner disputed that some of Plaintiff's medical bills were caused by the accident (those connected to his back injury) and refused to pay same. (Doc. 101-1 at 2–3.) Eventually, Plaintiff settled the medical treatment portion his workers' compensation claim with Turner. (Doc. 115 at 6.) Plaintiff and Turner settled their respective claims against United (Docs. 96 and 108) and those claims were dismissed. (Docs. 97 and 109.)

JLG hired Sarah Bergeron and Nancy Favaloro of Seyler Favaloro, Ltd. which provides rehabilitation counseling and life care planning (hereinafter, simply "Favaloro") to prepare a report assessing the employability and expected earnings range of Plaintiff as well as a life care plan. On December 17, 2020, JLG submitted to Plaintiff a supplemental report from Favaloro making cost projections for Plaintiff's future medical expenses based on the Louisiana Office of Workers' Compensation Maximum Fee Allowance Schedule ("Workers' Compensation Fee Schedule"). (Doc. 107-2.) Favaloro's original report was dated November 19, 2020 and was not attached to Plaintiff's motion.

## II.   SUMMARY OF ARGUMENTS OF THE PARTIES

Plaintiff moves to exclude Favaloro's supplemental report and any testimony based thereon because it was not filed within the deadline provided by the Court. (Doc. 107-1 at 2-4.) In addition, Plaintiff argues that the report is irrelevant and violates the criteria set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2799 (1933), in that she erroneously utilized the Worker's Compensation Fee Schedule which is appropriate for measuring Plaintiff's past medical expense loss but not his future costs. (*Id*. at 4-5.) This is

because *Simmons v. Cornerstone Investments, LLC*, 2018-0735 (La. 5/18/19); 282 So. 3d 199, the legal foundation for Favaloro's supplemental report, applies only to past medical expenses, not future ones, and only to "payments actually received by the plaintiff." (*Id*. at 5. (citing *Simmons*, 282 So. 3d at 203).) Finally, Plaintiff maintains that the use of the Workers' Compensation Fee Schedule costs violates life care planning standards. (*Id*. at 5-6.)

Defendant counters that Bergeron and Favaloro "did not provide a Supplemental Life Care Plan. They provided a supplement to their previously timely report." (Doc. 112 at 1.) Furthermore, Plaintiff's expert Lacy Sapp also filed a late supplement to her report. (*Id*. at 2.) On the merits of Favaloro's report, JLG argues that, while *Simmons* addresses only past medical expenses, "this same rationale applies to the value of projected future medical care." (*Id*. at 6.) The amounts charged by medical providers are, Defendant insists, fictional and, in reality, providers accept less than the amount charged in satisfaction of their bills. (*Id*. at 4-5 (citations omitted).)

### III.    DISCUSSION

On the issue of timeliness, Defendant's argument is disingenuous. Based on representations of counsel at oral argument on April 22, 2021, it appears that Favaloro's December 17, 2020 report is not a "supplement" to or update of her previous report. Rather, it introduces for the first time, at the specific request of counsel for JLG, the use of the Worker's Compensation Fee Schedule as the basis for her future medical care cost projections.[1] However, if that were the only complaint by Plaintiff, the Court would deny Plaintiff's motion and cure any prejudice by allowing Plaintiff to depose Favaloro on the December 17, 2020 report. *See BASF Corporation v. Man Diesel & Turbo North America, Inc.*, No. 13-42, 2016 WL 590465, at 2-3

---

[1] At the Pretrial Conference of April 22, 2021, counsel for JLG confirmed that in her original report, Favaloro utilized the same sources for future medical costs as Plaintiff's expert, Lacy Sapp.

3

(M.D. La. Feb. 11, 2016) (deGravelles, J.). But the Court finds that Favaloro's report should be excluded because it is not supported by *Simmons* and violates La. Code Evid. Art. 414.

The collateral source rule is not merely a rule of evidence but is also a substantive rule of law.

> The collateral-source rule bars a tortfeasor from reducing his liability by the amount plaintiff recovers from independent sources. *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994). It is a substantive rule of law, as well as an evidentiary rule (disallowing evidence of insurance or other collateral payments that may influence a fact finder). *Id.*
>
> In its simplest form, the rule asks whether the tortfeasor contributed to, or was otherwise responsible for, a particular income source. *See Bourque v. Diamond M. Drilling Co.*, 623 F.2d 351, 354 (5th Cir. 1980). If not, the income is considered "independent of (or collateral to) the tortfeasor", and the tortfeasor may not reduce its damages by that amount. *Davis*, 18 F.3d at 1243. In practice, the rule allows plaintiffs to recover expenses they did not personally have to pay. *See id*. Without the rule, however, a third-party income source would create a windfall for the tortfeasor. *Id.* at 1244. Thus, the rule reflects a policy determination: better a potential windfall for the injured plaintiff than the liable tortfeasor. See Restatement (Second) of Torts § 920A cmt. b. (Am. Law Inst. 1979) ("[I]t is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor".).

*Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 358–59 (5th Cir. 2016).

Because the collateral source rule is substantive, as well as evidentiary, this Court must apply Louisiana's version of the rule, represented most recently by *Simmons, supra*. *Guillory v. Starr Indem. & Liab. Co.*, No. 18-1634, 2020 WL 967572, at *3 (W.D. La. Feb. 26, 2020). After reviewing the jurisprudential development of Louisiana's collateral source rule, the Louisiana Supreme Court held that where a plaintiff's medical bills have been paid by workers' compensation, only the amount paid by the employer or its insurer can be presented to the jury and recovered by a plaintiff as past medical expenses in a third party tort suit. *Simmons,* 282 So. 3d at 200. The difference between the amount charged by the medical provider and the amount

4

set forth in the Workers' Compensation Fee Schedule, the so-called "written off" amount, "is not a collateral source and its exclusion from the purview of the jury [is] proper." *Id*.

But *Simmons* does not apply to justify Favaloro's supplemental report since *Simmons* only concerned *past* medical expenses actually paid. *Fox v. Nu Line Transport, LLC*, No. 18-502, 2020 WL 1542379, at *2 (W.D. La. Mar. 31, 2020) ("The Court agrees that Simmons does not specifically provide for future medical expenses."); *see also Padgett v. Fieldwood Energy LLC*, No. 18-632, 2020 WL 749722, at *4 (W.D. La. Feb. 13, 2020) (finding that the plaintiff "should not be prohibited from presenting evidence and testimony regarding the full amount of future medical expenses" in a tort case arising under the Outer Continental Shelf Lands Act, 43 U.S.C. §1331 et seq. where the plaintiff's medical bills were paid under the Longshore and Harbor Workers' Compensation Act).

Furthermore, Favaloro's report, by referring to and relying on the Louisiana Office of Workers' Compensation Maximum Fee Allowance Schedule, directly violates La. Code Evid. Art 414, which states:

> Evidence of the nature and extent of a workers' compensation claim or of payment of past or future workers' compensation benefits shall not be admissible to a jury, directly or indirectly, in any civil proceeding with respect to a claim for damages relative to the same injury for which the workers' compensation benefits are claimed or paid.

After ruling that the "phantom charge" or "written off" amount of the medical bill (that amount above what workers' compensation actually paid) is not subject to the collateral source rule, the Louisiana Supreme Court in *Simmons* cautioned that, even though the jury should hear evidence of the amounts paid by workers' compensation,

> no reference of its workers' compensation roots should be made in front of the jury pursuant to La. Code Evid. Art. 414. Stated another way, the **amount** of the payment is admissible, as Article 414 is written simply to prevent the jury from hearing about workers' compensation being the **source** of the payment. Such an approach, as found

5

by the lower courts and advocated for by Defendants, perfectly preserves the collateral source rule.

*Simmons*, 282 So.3d at 204. Favaloro's report and the attachment make explicit mention of the Louisiana Office of Worker's Compensation Maximum Fee Allowance Schedule. (Doc. 107-2 at 1-2.)

Ordinarily, "federal law governs the admissibility or other use of evidence in a federal proceeding[.]" *Francois v. General Health System*, 437 F. Supp. 3d 530, 535 (M.D. La. 2020) (deGravelles, J.) (quoting *United States v. Edwards*, 79 F. Supp. 2d 645, 648 (M.D. La. 1999)). This is premised on fundamental principles arising from *Erie R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188 (1938).

> In *Erie R. Co. v. Tompkins*, the Supreme Court declared that "[t]here is no federal general common law" and that, when sitting in diversity, "the law to be applied in any case is the law of the state." 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "The 'broad command of Erie,' of course, is that 'federal courts are to apply state substantive law and federal procedural law' when sitting pursuant to their diversity jurisdiction." *Burke v. Air Serv Intern., Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). As the Supreme Court has observed, however, "[c]lassification of a law as 'substantive' or 'procedural' for Erie purposes is sometimes a challenging endeavor." *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

*Nat'l Cas. Ins. Co. v. Solomon*, No. 20-1768, 2020 WL 6887931, at *5 (D.D.C. Nov. 24, 2020).

Furthermore, as set out in a well-recognized treatise:

> The principle that governs today is stated easily. As the numerous illustrative cases cited below make clear, if a[ ] [Federal] Evidence Rule covers a disputed point of evidence, the Rule is to be followed, even in diversity cases, and state law is pertinent only if and to the extent the applicable Rule makes it so or it provides the federal court with guidance in the construction and application of the Evidence Rules. Some modest exceptions have been made when the forum rule reflects a *state substantive law or policy*.

6

19 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4512 (3d ed. 2021) (emphasis added).

*Wright & Miller* provides an array of examples of where Federal Courts have applied a state's evidentiary rule because the rule "serves[s] substantive state policies or are intimately bound up with state created rights and obligations." *Id*. Among the examples is the collateral source rule.

> It should be noted that there is a varied collection of state law rules that, because their application results in the exclusion of evidence, sometimes are considered rules of evidence, but in fact serve substantive state policies or are intimately bound up with state created rights and obligations. Therefore, they are more properly regarded as rules of substantive law within the meaning of the Erie doctrine since they are part of the rights and obligations created by state law and should be honored and applied by the federal courts. Among these are the parol evidence rule, the collateral-source rule, the Statute of Frauds, the agency law principle that an agent's authority cannot be proved by his own statements, and rules regarding the admissibility of prejudicial evidence. Properly construed, the [federal] Evidence Rules do not affect or alter these "substantive rules of evidence," which have been enforced in federal court in a significant number of cases.

*Id.*

> The purpose of Art. 414 was discussed at length not long after its enactment in 1990.
>
> When La. R.S. 23:1101(D) was enacted by Acts 1990, No. 973, § 1, it was to provide that certain suits for reimbursement of benefits were to be tried before a judge only. At the same time La. Code Evid. art. 411.1 (now La. Code Evid. art. 414), which provided that evidence of the nature and extent of a workers' compensation claim or payment of benefits shall not be admissible to a jury, directly or indirectly, was enacted. This evidence was to be presented to the judge only.
>
> The obvious reason for these laws is to protect the integrity of the injured worker's claim against a third-party tortfeasor from being tainted with the evidence that the worker has already received some compensation or will receive some compensation. This could possibly lead a jury to make a lower and unfair award. These laws reaffirm the concept that the Workers' Compensation Act is "to insure the tortfeasor is held responsible for the damages he or she causes, and is not permitted to escape liability merely because the victim may be entitled to assert a

7

claim for compensation from the employer." *Stelly v. Overhead Door Co. of Baton Rouge*, 94-0569, p. 8 (La. 12/8/94); 646 So. 2d 905, 913.

*Legros v. Westlake Polymers Corp.,* 97-579, p. 9-10 (La. App. 3 Cir. 12/10/97); 704 So. 2d 876, 881–82.

Here, the Court is convinced that the prohibition set out in La. Code Evid. Art. 414 is part and parcel of Louisiana's collateral source rule and, as such, represents both the substantive law and policy of the State of Louisiana and must be applied in this Court. Article 414's connection to the collateral source rule is made clear in *Simmons* where the Louisiana Supreme Court found it appropriate to apply Art. 414 in conjunction with the collateral source rule and specifically found that applying Art. 414 "perfectly preserves" the collateral source rule. *Simmons,* 282 So. 3d at 204. Consequently, any evidence of payment of past medical bills will be introduced in compliance with the prohibition set forth in La. Code Evid. Art 414.

Because Favaloro's report violates the prohibition set out in Art. 414, Plaintiff's motion is granted. The Court notes that, even if Article 414 did not apply, the Court would have the authority to exclude evidence of workers' compensation under Federal Rules of Evidence 401 and 403. *Michel v. Ford Motor Co*., No. 18-4738, 2019 WL 7562759, at *2 (E.D. La. Feb. 13, 2019) (Vance, J.) (citing *Deperrodil* 842 F.3d 352, 358 and *Gates v. Shell Oil*, 812 F. 2d 1509, 1513 (5th Cir. 1987) ("Under the evidentiary portion of the rule, evidence of collateral benefits is inadmissible in the trial court's discretion if it may improperly influence the jury.").  In *Michel*, the Court excluded evidence of a collateral source because "collateral source evidence poses too great a risk of influencing the jury during damage calculations, and that its probative value is substantially outweighed by a risk of undue prejudice under Rule 403." *Id*.

According to Plaintiff, he settled the past and future medical expenses portion of his workers' compensation claim with Turner. (Doc. 115 at 6 ("Moreover, [Plaintiff's] workers'

8

compensation claim for medical treatment has been settled.").)[2] Thus, evidence of the Workers' Compensation Fee Schedule is irrelevant for calculation of Plaintiff's future medical costs. To the extent relevant and to the extent not prohibited by Article 414, the Court finds that the risk of unfair prejudice and confusion outweighs any probative value it may have.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** Plaintiff's *Motion to Exclude Testimony and Defendant's Life Care Plan* (Doc. 107) is **GRANTED**.

Signed in Baton Rouge, Louisiana, on May 28, 2021.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[2] This was confirmed by the parties at the April 22, 2021, Pretrial Conference.