UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CEDRIC LEE

VERSUS

UNITED RENTALS, INC., ET AL.

CIVIL ACTION

NO. 18-977-JWD-EWD

**RULING ON JLG INDUSTRIES, INC.'S MOTION IN LIMINE/*DAUBERT* MOTION REGARDING PAST AND FUTURE MEDICAL EXPENSES AND TESTIMONY RELATED TO SAME BY PLAINTIFF'S EXPERT, LACY SAPP, PH.D.**

Before the Court is *JLG Industries, Inc.'s Motion in Limine/*Daubert *Motion Regarding Past and Future Medical Expenses and Testimony Related to Same by Plaintiff's Expert, Lacy Sapp, Ph.D.* (Doc. 101) brought by defendant JLG Industries, Inc. ("JLG"). Plaintiff Cedric Lee ("Lee" or "Plaintiff") opposes the motion. (Doc. 115.) JLG filed a reply brief. (Doc. 124.) The Court has carefully considered the law, the facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted in part and denied in part.

I.  BACKGROUND

This product liability lawsuit arises out of an accident which occurred on September 20, 2017 at the PCS Nitrogen Fertilizer LP ("PCS") plant in Geismar, Louisiana. (Doc. 101-1 at 2 (citing Plaintiff's *Petition for Damages*).) Plaintiff, an employee of Turner Industries Group, LLC, ("Turner") claims as he was driving a boom lift manufactured by JLG, the lift suddenly accelerated as he crossed over a speed bump causing him to fall back into the basket and sustain injuries. (*Id.*) Plaintiff claims the accident and resulting injuries were the result of a defectively designed function speed control switch on the boom lift. (Doc. 114 at 3.) Plaintiff sued JLG as the designer and manufacturer of the lift and United Rentals, Inc. and/or United Rentals (North

1

America), Inc. (collectively, "United") as the entity which leased the boom lift to PCS. (Doc. 19.)

Turner paid workers' compensation benefits to Plaintiff and his medical bills to Plaintiff's providers. Turner filed a *Complaint of Intervention* seeking to recover these amounts from JLG and United. (Doc. 101-3; *see also* Doc. 40.) According to JLG, Turner disputed that some of Plaintiff's medical bills were caused by the accident (those connected to his back injury) and refused to pay same. (Doc. 101-1 at 2–3.) Eventually, Plaintiff settled the medical treatment portion his workers' compensation claim with Turner. (Doc. 115 at 6.) Plaintiff and Turner settled their respective claims against United (Docs. 96 and 108) and those claims were dismissed. (Docs. 97 and 109.)

Plaintiff hired Certified Life Care Planner Lacy H. Sapp, Ph.D.[1] ("Sapp") to create a life care plan calculating the costs associated with Plaintiff's future medical care needs. Her updated life care plan is attached to JLG's motion. (Doc. 101-6.) In calculating the cost of future medical care, Sapp used "non-discounted/market rate prices . . . [which are] geographically specific when appropriate and available." (Doc 115-1 at 3.)

## II.     SUMMARY OF THE ARGUMENTS OF THE PARTIES

JLG's central argument is that because this was a work related accident entitling Plaintiff to workers' compensation benefits, including the payment of medical bills, Plaintiff and his expert should be required to utilize the costs set out in the Louisiana Office of Workers' Compensation Maximum Fee Allowance Schedule ("Workers' Compensation Fee Schedule")[2] for purposes of both past and future medical expenses. (Doc. 101-1 at 4–6 (citing *Simmons v.*

---

[1] Sapp's Curriculum Vitae is attached to Plaintiff's opposition. (Doc. 115-3.) JLG does not challenge Sapp's qualifications. (Doc. 124 at 7.)
[2] https://www2.laworks.net/Downloads/Downloads_OWC.asp#Medical

2

*Cornerstone Investments, LLC*, 2018-0735 (La. 5/8/19); 282 So. 3d 199 and La. R.S. 23:1034.2(D)).) *Simmons* makes clear that "the amount of medical expenses charged above the amount actually incurred is not a collateral source and its exclusion from the purview of the jury [is] proper." 282 So. 3d at 200. JLG argues that this reasoning should also be extended to future medical expenses as well since the "workers' compensation carrier paid and will continue to pay for the plaintiff's ankle and leg injury."[3] (Doc. 101-1 at 7.)

While JLG does not challenge Sapp's credentials as a life care planner (Doc 124 at 7), it argues that her methodology in arriving at the costs for Plaintiffs' future medical treatment is "inherently unreliable and flawed" (Doc. 101-1 at 7 and Doc. 124 at 6) because "she did not consider the following critical evidence:

- The plaintiff's alleged injuries occurred while in the course and scope of [his] employment;
- She did not consult the workers' compensation reimbursement schedule;
- She did not review documentation regarding payment by the workers' compensation carrier; and
- She did not research what medical facilities accept in full satisfaction of their charges."

(Doc. 101-1 at 9.)

In response, Plaintiff states he "is willing to stipulate that under *Simmons*, [P]laintiff may only recover past medical expenses in the amount paid by workers' compensation [but] Plaintiff is unwilling to stipulate that this information should be published to the jury." (Doc. 115 at 1.) In addition, argues Plaintiff, the workers' compensation rates "should not apply to the calculation of

---

[3] JLG concedes that Turner refused to pay for expenses connected to Plaintiff's back injury. (Doc. 101-1 at 2–3.)

future medical care costs[.]" (*Id.*) Regarding future medical costs, Plaintiff notes that *Simmons* dealt only with past medical care and has no application to future care costs. (*Id.* at 3–6 (citing and discussing *Fox v. Nu Line Transport, LLC*, No. 18-502, 2020 WL 1542379 (W.D. La. Mar. 31, 2020) and *Padgett v. Fieldwood Energy LLC*, No. 18-632, 2020 WL 749722 (W.D. La. Feb. 13, 2020)).)

Plaintiff argues that to restrict his future damage recovery to workers' compensation rates would hinder full recovery in violation of a "tort victim's right to be made whole." (*Id.* at 6.) Plaintiff would get no windfall since Turner would receive "a dollar for dollar future credit" against any tort damage award for future medical expenses and its obligation would "not resume until money from the tort judgment is exhausted." (*Id.* (citing La. R.S. 23:1103).) Plaintiff also notes that his workers' compensation claim for medical treatment (including future medical treatment) has been settled. (*Id.*)[4]

Regarding JLG's challenge of Sapp's methodology, Plaintiff argues that, as to the expenses related to his back and neck injuries, workers' compensation rates are irrelevant since Turner denied this part of his claim. More fundamentally however, "there is simply no law requiring Dr. Sapp to consult the worker's compensation reimbursement schedule." (*Id.* at 9.) Indeed, standards within her profession "require[ ] her to calculate the charge for private pay for the services[.]" (*Id.* at 10.)

In its reply brief, JLG reiterates its argument that "the same logic" applied by the Louisiana Supreme Court in *Simmons* to past medical expenses should apply equally to future medical expenses. (Doc. 124 at 2.) Allowing the jury to consider medical bills in excess of the reduced rate payable by workers' compensation or which would be accepted by the provider

---

[4] This was confirmed by the parties at the Pretrial Conference on April 22, 2021.

would be "patently unfair, unjust and contradictory to the basic principles of tort recovery." (Doc. 124 at 3–4.) With respect to the expenses incurred in connection to Plaintiff's back condition, JLG intends to prove that this condition is unrelated to the subject accident but, if related, "would necessarily trigger his rights for the workers' compensation carrier to pay for his treatment." (*Id.* at 5.) "In either instance, the future expense should be limited to the amounts set forth in the Workers [sic] Compensation Schedule." (*Id.*)

JLG maintains that *Fox v. Nu Line Transport, LLC*, relied on by Plaintiff in his brief, stands for the proposition that "Louisiana law explicitly affords JLG the opportunity to challenge the plaintiff's damages calculations at trial." (*Id*. (citing *Fox*, 2020 WL 1542379, at *2).) JLG argues that *Padgett v. Fieldwood Energy, LLC,* 2020 WL 749722*,* does not support Plaintiff's position*.* Although *Padgett* found that the plaintiff there would not be paid workers' compensation benefits until the credit from his tort recovery was exhausted, this "does not change the fact of what is owed." (*Id*. at 6.) Regarding Sapp's methodology, JLG maintains that, by using market rates rather than the workers' compensation schedule, her report "paints a fictional picture of what the plaintiff's future medical expenses would look like in an untrue world . . . [and] should be excluded." (*Id*. at 7.)

### III.    DISCUSSION

The collateral source rule is not merely a rule of evidence but is also a substantive rule of law.

> The collateral-source rule bars a tortfeasor from reducing his liability by the amount plaintiff recovers from independent sources. *Davis v. Odeco, Inc*., 18 F.3d 1237, 1243 (5th Cir. 1994). It is a substantive rule of law, as well as an evidentiary rule (disallowing evidence of insurance or other collateral payments that may influence a fact finder). *Id*.
>
> In its simplest form, the rule asks whether the tortfeasor contributed to, or was otherwise responsible for, a particular income source. *See Bourque v. Diamond M*.

5

*Drilling Co.*, 623 F.2d 351, 354 (5th Cir. 1980). If not, the income is considered "independent of (or collateral to) the tortfeasor", and the tortfeasor may not reduce its damages by that amount. *Davis*, 18 F.3d at 1243. In practice, the rule allows plaintiffs to recover expenses they did not personally have to pay. *See id*. Without the rule, however, a third-party income source would create a windfall for the tortfeasor. *Id*. at 1244. Thus, the rule reflects a policy determination: better a potential windfall for the injured plaintiff than the liable tortfeasor. See Restatement (Second) of Torts § 920A cmt. b. (Am. Law Inst. 1979) ("[I]t is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor".).

*Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 358–59 (5th Cir. 2016).

Because the collateral source rule is substantive, as well as evidentiary, this Court must apply Louisiana's version of the rule, represented most recently by *Simmons, supra*. *Guillory v. Starr Indem. & Liab. Co.*, No. 18-1634, 2020 WL 967572, at *3 (W.D. La. Feb. 26, 2020). After reviewing the jurisprudential development of Louisiana's collateral source rule, the Louisiana Supreme Court held that where a plaintiff's medical bills have been paid by worker's compensation, only the amount paid by the employer or its insurer can be presented to the jury and recovered by a plaintiff as past medical expenses in a third party tort suit. *Simmons,* 282 So. 3d at 200. The difference between the amount charged by the medical provider and the amount set forth in the Workers' Compensation Fee Schedule, the so-called "written off" amount, "is not a collateral source and its exclusion from the purview of the jury [is] proper." (*Id.*)

Plaintiff does not disagree (Doc. 115 at 1) nor could he. Thus, as to past medical expenses paid by workers' compensation, JLG's motion is granted, and only those amounts paid by Turner will be presented to the jury in support of Plaintiff's past medical expenses claim.

However, there are two matters left in contention: first, may the Plaintiff offer evidence of the amounts charged by Plaintiff's providers in connection with his back injury which Turner refused to pay? Second, may Plaintiff present evidence of the market rate for Plaintiff's future

6

medical needs or is he relegated to the amounts set out in the Workers' Compensation Fee Schedule? As to both items, *Simmons* is not controlling.

As to the bills incurred in connection with his back injury, Turner refused to pay these since it considered these charges unrelated to the accident. (Doc. 101-1 at 2-3.) JLG has offered no case support for its argument that the jury should consider only the workers' compensation schedule amounts for these charges. The Court rejects JLG's argument that a jury verdict in this case awarding past medical expenses for his back injury "would necessarily trigger his rights for the workers' compensation carrier to pay for his treatment." (Doc. 124 at 5.) Again, JLG has failed to point to any authority supporting its contention that a jury's finding in the civil tort case would bind the parties or the Office of Workers' Compensation ("OWC") hearing officer in a contested workers' compensation case. These are fundamentally different proceedings. *Iberia Med. Ctr. v. Ward*, 2009-2705 (La. 11/30/10); 53 So. 3d 421, 431 ("Whether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the OWC hearing officer." (citing *Buxton v. Iowa Police Dept.*, 2009-0520, p. 18 (La. 10/20/09), 23 So.3d 275, 287.)) What's more, Plaintiff has settled his workers' compensation case with Turner for future medical treatment, and Turner no longer owes an obligation to pay Plaintiff's medical bills. (Doc. 115 at 6.)

Although Plaintiff will be limited in his claim for past medical expenses to those amounts paid for by workers' compensation, the Court stresses that the fact that these were paid by workers' compensation or, indeed, any reference to workers' compensation, direct or indirect, before the jury is expressly prohibited by La. Code Evid. art. 414, which states:

> Evidence of the nature and extent of a workers' compensation claim or of payment of past or future workers' compensation benefits shall not be admissible to a jury, directly or indirectly, in any civil proceeding with respect to a claim for damages

7

relative to the same injury for which the workers' compensation benefits are claimed or paid.

After ruling that the "phantom charge" or "written off" amount of the medical bills (that amount above what workers' compensation actually paid) is not subject to the collateral source rule, the Louisiana Supreme Court in *Simmons* cautioned that, even though the jury should hear evidence of the amounts paid by workers' compensation,

> no reference of its workers' compensation roots should be made in front of the jury pursuant to La. Code Evid. Art. 414. Stated another way, the **amount** of the payment is admissible, as Article 414 is written simply to prevent the jury from hearing about workers' compensation being the **source** of the payment. Such an approach, as found by the lower courts and advocated for by Defendants, perfectly preserves the collateral source rule.

*Simmons*, 282 So.3d at 204.

Ordinarily, "federal law governs the admissibility or other use of evidence in a federal proceeding[.]" *Francois v. General Health System*, 437 F. Supp. 3d 530, 535 (M.D. La. 2020) (quoting *United States v. Edwards*, 79 F. Supp. 2d 645, 648 (M.D. La. 1999). This is premised on fundamental principles arising from *Erie R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188 (1938).

> In *Erie R. Co. v. Tompkins*, the Supreme Court declared that "[t]here is no federal general common law" and that, when sitting in diversity, "the law to be applied in any case is the law of the state." 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "The 'broad command of Erie,' of course, is that 'federal courts are to apply state substantive law and federal procedural law' when sitting pursuant to their diversity jurisdiction." *Burke v. Air Serv Intern., Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). As the Supreme Court has observed, however, "[c]lassification of a law as 'substantive' or 'procedural' for Erie purposes is sometimes a challenging endeavor." *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

*Nat'l Cas. Ins. Co. v. Solomon*, No. 20-1768, 2020 WL 6887931, at *5 (D.D.C. Nov. 24, 2020).

8

Furthermore, as set out in a well-recognized treatise:

> The principle that governs today is stated easily. As the numerous illustrative cases cited below make clear, if a[ ] [Federal] Evidence Rule covers a disputed point of evidence, the Rule is to be followed, even in diversity cases, and state law is pertinent only if and to the extent the applicable Rule makes it so or it provides the federal court with guidance in the construction and application of the Evidence Rules. Some modest exceptions have been made when the forum rule reflects a *state substantive law or policy*.

19 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4512 (3d ed. 2021) (emphasis added).

*Wright & Miller* provides an array of examples of where Federal Courts have applied a state's evidentiary rule because the rule "serves[s] substantive state policies or are intimately bound up with state created rights and obligations." *Id*. Among the examples is the collateral source rule.

> It should be noted that there is a varied collection of state law rules that, because their application results in the exclusion of evidence, sometimes are considered rules of evidence, but in fact serve substantive state policies or are intimately bound up with state created rights and obligations. Therefore, they are more properly regarded as rules of substantive law within the meaning of the Erie doctrine since they are part of the rights and obligations created by state law and should be honored and applied by the federal courts. Among these are the parol evidence rule, the collateral-source rule, the Statute of Frauds, the agency law principle that an agent's authority cannot be proved by his own statements, and rules regarding the admissibility of prejudicial evidence. Properly construed, the [federal] Evidence Rules do not affect or alter these "substantive rules of evidence," which have been enforced in federal court in a significant number of cases.

*Id*.

The purpose of Art. 414 was discussed at length not long after its enactment in 1990.

> When La. R.S. 23:1101(D) was enacted by Acts 1990, No. 973, § 1, it was to provide that certain suits for reimbursement of benefits were to be tried before a judge only. At the same time La. Code Evid. art. 411.1 (now La. Code Evid. art. 414), which provided that evidence of the nature and extent of a workers' compensation claim or payment of benefits shall not be admissible to a jury,

9

> directly or indirectly, was enacted. This evidence was to be presented to the judge only.
>
> The obvious reason for these laws is to protect the integrity of the injured worker's claim against a third-party tortfeasor from being tainted with the evidence that the worker has already received some compensation or will receive some compensation. This could possibly lead a jury to make a lower and unfair award. These laws reaffirm the concept that the Workers' Compensation Act is "to insure the tortfeasor is held responsible for the damages he or she causes, and is not permitted to escape liability merely because the victim may be entitled to assert a claim for compensation from the employer." *Stelly v. Overhead Door Co. of Baton Rouge,* 94-0569, p. 8 (La. 12/8/94); 646 So. 2d 905, 913.

*Legros v. Westlake Polymers Corp.*, 97-579, p. 9-10 (La. App. 3 Cir. 12/10/97); 704 So. 2d 876, 881–82.

Here, the Court is convinced that the prohibition set out in La. Code Evid. Art. 414 is part and parcel of Louisiana's collateral source rule and, as such, represents both the substantive law and policy of the State of Louisiana and must be applied by this Court. Article 414's connection to the collateral source rule is made clear in *Simmons* where the Louisiana Supreme Court found it appropriate to apply Art. 414 in conjunction with the collateral source rule and specifically found that applying Art. 414 "perfectly preserves" the collateral source rule. *Simmons* 282 So.3d at 204. Consequently, any evidence of payment of past medical bills will be introduced in compliance with the prohibition set forth in La. Code Evid. Art 414.

The Court notes that, even if Article 414 did not apply, the Court would have the authority to exclude evidence of workers' compensation under Federal Rules of Evidence 401 and 403. *Michel v. Ford Motor Co.*, No. 18-4738, 2019 WL 7562759, at *2 (E.D. La. Feb. 13, 2019) (Vance, J.) (citing *Deperrodil* 842 F.3d 352, 358 and *Gates v. Shell Oil*, 812 F. 2d 1509, 1513 (5th Cir. 1987) ("Under the evidentiary portion of the rule, evidence of collateral benefits is inadmissible in the trial court's discretion if it may improperly influence the jury.") In *Michel*, the Court excluded evidence of a collateral source because "collateral source evidence poses too

10

great a risk of influencing the jury during damage calculations, and that its probative value is substantially outweighed by a risk of undue prejudice under Rule 403". *Id.*

As to the second item, future medical expenses, *Simmons* does not apply since it only concerned past medical expenses actually paid. *Fox*, 2020 WL 1542379, at *2 ("The Court agrees that *Simmons* does not specifically provide for future medical expenses."); *see also Padgett*, 2020 WL 749722, at *4 (finding that the plaintiff "should not be prohibited from presenting evidence and testimony regarding the full amount of future medical expenses" in a tort case arising under the Outer Continental Shelf Lands Act, 43 U.S.C. §1331 *et seq.* where the plaintiff's medical bills were paid under the Longshore and Harbor Workers' Compensation Act).

JLG is correct that in *Fox,* the Court ruled that "Defendants will be given an opportunity at trial to challenge Plaintiffs' damage calculations," 2020 WL 1542379, at *2, and JLG will have that right in the trial of this case. But this begs the question of whether JLG may question Sapp regarding the rates mandated under the Louisiana Workers' Compensation Fee Schedule.[5] Since Plaintiff has settled the medical payments portion of his workers' compensation claim, Plaintiff has no right to have his future medical bills paid by workers' compensation and therefore the workers' compensation rates are irrelevant. For that reason alone, JLG is prohibited from referring to workers' compensation reimbursement rates.

But even if his medical claim had not been settled and Turner was bound to pay Plaintiff's accident related future medical expenses, La. Code Evid. Art 414 renders inadmissible before the jury "[e]vidence of the nature and extent of a workers' compensation claim or of

---

[5] A similar issue is whether JLG's expert life care planners, Sarah Bergeron and Nancy Favaloro, can use these rates in the calculation of the cost of Plaintiff's future medical care. This issue is raised and being considered in connection with Plaintiff's *Motion to Exclude Testimony and Defendant's Life Care Plan*. (Doc. 107.)

11

payment of past or future workers' compensation benefits[.]"; *see also Simmons*, 282 So.3d at 204. Thus, any challenge to Sapp's conclusions and opinions will be made in compliance with the dictates of Art. 414. In conclusion, the Court denies JLG's demand that, as to his past medical expenses arguably related to his back injury and all future medical payments, Plaintiff and his expert be limited to the amounts payable under the Workers' Compensation Fee Schedule.

JLG's challenge to Sapp's methodology and opinions is based on the same argument, i.e. she erred in failing to consider and utilize Louisiana's Workers' Compensation Fee Schedule for purposes of establishing future medical costs and, instead, used non-discounted market rates. For the reasons detailed above, this is not an error in methodology. As Sapp sets out in her declaration, her use of non-discounted/market rate prices is in accordance with the standards and ethical codes of both the International Association of Rehabilitation Professionals and the International Commission on Health Care Certification Code of Professional Ethics. (Doc. 115-1 at 3–4.) Evidence of workers' compensation reimbursement rates in connection with future medical expenses is irrelevant, is unduly prejudicial and confusing to the jury, and would contravene La. Code Evid. Art. 414. Thus, JLG's motion is denied in this regard as well.

## IV.    CONCLUSION

Accordingly

**IT IS ORDERED** that *JLG Industries, Inc.'s Motion in Limine/*Daubert *Motion Regarding Past and Future Medical Expenses and Testimony Related to Same by Plaintiff's Expert, Lacy Sapp, Ph.D.* (Doc. 101) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** in that only those amounts paid by Turner for Plaintiff's past medical

expenses will be presented to the jury in support of Plaintiff's past medical expenses claim. In all other respects, JLG's motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on May 28, 2021.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**